# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 11-00136 |
| | ) | |
| **LEE MICHAEL FACKLIS,** | ) | Chapter 7 |
| | ) | |
| | ) | Hon. Pamela S. Hollis |
| **Debtor.** | ) | Hearing Date: September 24, 2015 |
| | ) | Hearing Time: 10:30 a.m. |
| | ) | |

## COVER SHEET FOR FIRST AND FINAL APPLICATION OF SEYFARTH SHAW LLP FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO CHAPTER 7 TRUSTEE GUS A. PALOIAN FOR THE PERIOD OF DECEMBER 1, 2013 THROUGH THE CLOSE OF THE CASE

Name of Applicant:                          Seyfarth Shaw LLP

Authorized to Provide
Professional Services to:                   Chapter 7 Trustee Gus A. Paloian

Date of Appointment:                        February 11, 2014, retroactive to December 1, 2013

Period for which Compensation
and Reimbursement is Sought:                December 1, 2013 through the Close of the Case

Amount of Interim Compensation
Sought:                                     $38,161.00

Amount of Interim Expense
Reimbursement Sought:                       $244.20

This is an:    X   Final _____ Interim Application.    Prior Applications: None

Dated: August 19, 2015                      Respectfully submitted,

                                            GUS A. PALOIAN, not individually or
                                            personally, but solely in his capacity as the
                                            Chapter 7 Trustee of Debtor's Estate

                                            By:/s/ James B. Sowka
                                               Gus A. Paloian (6188186)
                                               James B. Sowka (6291998)
                                               Bret M. Harper (6299968)
                                               SEYFARTH SHAW LLP
                                               131 South Dearborn Street
                                               Suite 2400
                                               Chicago, Illinois 60603
                                               Telephone: (312) 460-5000
                                               *Counsel to Chapter 7 Trustee Gus A. Paloian*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 11-00136 |
| | ) | |
| LEE MICHAEL FACKLIS, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Hon. Pamela S. Hollis |
| | ) | Hearing Date: September 24, 2015 |
| | ) | Hearing Time: 10:30 a.m. |

### FIRST AND FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES AS  COUNSEL TO CHAPTER 7 TRUSTEE GUS A. PALOIAN FOR THE PERIOD FROM DECEMBER 1, 2013 THROUGH THE CLOSE OF THE CASE

Pursuant to Sections 105(a) and 330 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 through 1330, *as amended* (the "Bankruptcy Code"), Seyfarth Shaw LLP ("Seyfarth"), as counsel to Gus A. Paloian, not individually or personally, but solely in his capacity as the duly-appointed Chapter 7 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of the above-captioned debtor (the "Debtor"), hereby submits its First and Final Application for Compensation and Reimbursement of Expenses (the "Application") for legal services performed, and expenses incurred, during the period from December 1, 2013 through the Close of the Case (the "Application Period").  In support of this Application, Seyfarth respectfully represents, as follows:

### I. INTRODUCTION

1.    Seyfarth makes this Application pursuant to: (A) Sections 105(a) and 330 of the Bankruptcy Code;  (B) Rule 2016 of the Federal Rules of Bankruptcy Procedure (singularly, a "Rule";  collectively, the "Rules");  (C) certain applicable provisions of the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted by the Office of the United States Trustee (the "Guidelines");  (D) Rule

5082-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Illinois (the "Court"); (E) that certain Order of the Court entered in the above-captioned case (the "Case") on January 28, 2014, authorizing Seyfarth's retention as counsel to the Trustee retroactive to December 1, 2013; and (F) other applicable case law.

2.     In making this Application, Seyfarth respectfully seeks an Order of this Court awarding and directing payment from the Advance of: (1) final allowance of compensation in the amount of $38,161.00 for professional services rendered by Seyfarth on behalf of the Trustee during the Application Period; and (2) final reimbursement of actual and necessary expenses in the amount of $244.20 incurred by Seyfarth in rendering such professional services to the Trustee in the Case.

## II. JURISDICTION

3.     This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is before the Court pursuant to 28 U.S.C. § 157 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue of this Case and this Application is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(A) and/or (O).

## III. BACKGROUND

4.     On January 4, 2011, the above-captioned Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 through 1330, as amended (the "Bankruptcy Code"), thereby commencing the above-captioned case (the "Case").

5.     On February 4, 2011, the Debtor filed his schedules of assets and liabilities (collectively and as amended, the "Schedules") and his Statement of Financial Affairs ("SOFA"). *See* Dkt. Nos. 18, 19. Thereafter, the Debtor filed certain amended Schedules. *See* Dkt. No. 174.

6.     On July 9, 2013, this Court entered an Order converting the case to Chapter 7.

*See* Dkt. No. 189.

7.     The U.S. Trustee appointed Gus A. Paloian as the Chapter 7 Trustee, pursuant to

Letter of Appointment entered with the Court on July 10, 2013. *See* Dkt. 190.

8.     The U.S. Trustee set the Bankruptcy Code section 341 meeting of creditors

("Meeting of Creditors") for August 14, 2013. The Trustee continued the Meeting of Creditors

in September, October and November, 2013 in order to investigate potential assets to be

administered.

9.     The continued Meeting of Creditors was convened on January 10, 2014.

## IV. SUMMARY OF SERVICES RENDERED, AND EXPENSES INCURRED, BY SEYFARTH

### A. Overview

10.     This Application is the first and final application for compensation and expense

reimbursement that Seyfarth has filed in this Case.

11.     To date, Seyfarth's services to the Trustee and the Estate include the following:

(a) conduct initial review and analysis of the Debtor's books and records, including but not

limited to transactional documents, notes and mortgages; (b) conduct review of Debtor's

schedules and statement of financial affairs and investigate potential cause for objection to

certain claimed exemptions; (c) investigate potential cause for numerous fraudulent transfer

actions and prepare 2004 motion and related subpoenas; (d) conduct review and analysis of

numerous court actions pending in various jurisdictions involving the Debtor and/or Debtor

related entities in order to identify those matters warranting immediate action by Trustee to assert

rights on behalf of the Estate; (e) preparation, filing and appearance in Court on motion to

change venue from Lake County to Chicago; (f) negotiations culminating in an agreement with

3

PNC as Agent to Lenders, and Lenders, to provide a $200,000 advance to Trustee in order to administer the Estate; (g) preparation, filing and appearance in Court on motion to allow PNC subordinated administrative expense claim; (h) preparation, filing and appearance in Court on five motions to extend time to object to discharge under 11 U.S.C. § 727; (i) preparation, filing and appearance in Court on motion to retain Trustee's counsel; (j) conduct initial analysis of the claims filed in the Debtor's bankruptcy case; (k) conduct initial investigation of possible sale of 3927 Belmont property; (l) various meetings and discussions with the U.S. Trustee and Debtor's counsel regarding the Debtor's bankruptcy case; (m) extensive settlement negotiations with the Debtor.

      12.    During the Application Period, Seyfarth has: (i) provided legal services to the Trustee in the amount of $38,161.00 (the "Fees"), and (ii) advanced costs in the amount of $244.20 (the "Expenses") in connection with the legal services that it has provided to the Trustee.

      13.    The following table consists of a breakdown of the amount of Fees incurred by each Seyfarth professional, including each such professional's: (i) title, (ii) hourly rate, (iii) total hours expended in providing legal services in the Case, and (iv) the value attributable to such legal services:

| PROFESSIONAL | TITLE | 2013 HOURLY RATE | 2014 HOURLY RATE | 2015 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|---|
| Gus A. Paloian | Partner | $625.00 | $650.00 | $690.00 | 27.10 | $17,411.50 |
| James B. Sowka | Partner | $405.00 | $430.00 | $445.00 | 19.50 | $8,287.50 |
| Christopher J. Harney | Associate | $350.00 | $375.00 | $455.00 | 0.60 | $225.00 |

| PROFESSIONAL | TITLE | 2013 HOURLY RATE | 2014 HOURLY RATE | 2015 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|---|
| Bret M. Harper | Associate | $305.00 | $330.00 | $390.00 | 16.90 | $5,577.00 |
| Jennifer M. McManus | Paralegal | $270.00 | $285.00 | $300.00 | 62.40 | $18,051.00 |
| Julie Ziegler | Case Assistant | $90.00 | $100.00 | $100.00 | 7.80 | $778.00 |
| TOTAL: | | | | | 134.30 | $50,330.00 |

14.     Biographies for the attorneys listed above who performed the bulk of the services in this matter describing their qualifications and areas of expertise are attached hereto as **Exhibit 1.**

15.     During the Application Period, Seyfarth made every reasonable effort to have services that it rendered to the Trustee performed by those qualified professionals charging the lowest hourly rates consistent with the level of service, experience, and efficiency required of a given task.

16.     All of the compensation for which Seyfarth requests allowance and payment, and all of the expenses for which Seyfarth requests reimbursement, in this Application relate to the discharge of Seyfarth services, as requested by the Trustee, during the Application Period.

17.     Seyfarth respectfully submits that its services rendered to the Trustee and expenses incurred during the Application Period have, in all respects, been reasonable, necessary, and beneficial to the Estate, as further discussed herein.

### B. Time and Expense Records

18.     Seyfarth maintains written records of the time expended by its professionals. These time records are maintained: (i) contemporaneously with the rendition of services by each

Seyfarth professional, and (ii) separately from those of the Trustee, in accordance with established procedures within this District.

19.     Such records for the Case, copies of which are grouped and attached hereto as **Exhibit 2** and which are incorporated herein by reference, set forth in detail: (i) the services which Seyfarth rendered on behalf of the Trustee, (ii) the dates upon which such services were rendered, and (iii) the amount of time spent on the services in one-tenth of one hour increments.

20.     Seyfarth also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with rendering services to the Trustee. A complete listing of the Expenses and the amounts for which reimbursement is sought is attached hereto as **Exhibit 3** and incorporated herein by reference.

## C.  Breakdown of Fees by Category of Services Rendered

21.     For the Court's convenience, Seyfarth has categorized its services to the Trustee during the Application Period into four (4) categories, as follows: (i) Case Administration; (ii) Claims Review and Analysis; (iii) Sale of Assets; and (iv) Fee Applications.

### CASE ADMINISTRATION (26.60  HOURS VALUED AT $9,729.00)

22.     During the Application Period, Seyfarth performed 26.60 hours of services having a value of $9,729.00 on behalf of the Trustee on matters related to case administration including:

A.     Communicating with Debtor's counsel regarding Debtor's assets;

B.     Preparing the application to retain counsel;

C.     Preparing the application to retain accountant;

D.     Appearing in Court for hearings on, among other things,  the retention applications;

D.   Conferences, teleconferences, and/or correspondence regarding assets and liabilities of the Estate, generally;

E.   Review and analysis of Estate books, records and various corporate and financial documentation recovered from the Debtor in order to determine veracity of same;

F.   Communications with creditors and other parties-in-interest regarding case status, processes, procedures and effects of the bankruptcy proceedings; and,

G.   Performing general ministerial tasks necessary for effective case administration including, but not limited to, coordinating conflicts searches and tracking and analyzing related results, and attention to pending Debtor bankruptcy and litigation proceedings.

A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | 2013 HOURLY RATE | 2014 HOURLY RATE | 2015 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|---|
| Gus A. Paloian | Partner | $625.00 | $650.00 | $690.00 | 5.70 | $3,671.00 |
| James B. Sowka | Associate | $405.00 | $430.00 | $445.00 | 5.30 | $2,201.50 |
| Bret M. Harper | Associate | $305.00 | $330.00 | $390.00 | 0.70 | $231.00 |
| Jennifer M. McManus | Paralegal | $270.00 | $285.00 | $300.00 | 11.70 | $3,307.50 |
| Julie Ziegler | Case Assistant | $90.00 | $100.00 | $100.00 | 3.20 | $318.00 |
| TOTAL: | | | | | 26.60 | $9,729.00 |

### CLAIMS REVIEW AND ANALYSIS (22.40 HOURS VALUED AT $7,853.50)

23.    During the Application Period, Seyfarth performed 22.40 hours of services having a value of $7,853.50 on behalf of the Trustee on matters related to claims review and analysis including:

        A.    Conduct review and analysis of claims and prepare related spreadsheet; analyze and resolve secured claims; and

        B.    Preparation and filing Objection to Claim No. 11 and attend hearing on same.

A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | 2013 HOURLY RATE | 2014 HOURLY RATE | 2015 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|---|
| Gus A. Paloian | Partner | $625.00 | $650.00 | $690.00 | 4.50 | $2,970.50 |
| James B. Sowka | Partner | $405.00 | $430.00 | $445.00 | 0.10 | $43.00 |
| Christopher J. Harney | Associate | $350.00 | $375.00 | $455.00 | 0.60 | $225.00 |
| Bret M. Harper | Associate | $305.00 | $330.00 | $390.00 | 0.70 | $231.00 |
| Jennifer M. McManus | Paralegal | $270.00 | $285.00 | $300.00 | 14.30 | $4,164.00 |
| Julie Ziegler | Case Assistant | $90.00 | $100.00 | $100.00 | 2.20 | $220.00 |
| TOTAL: | | | | | 22.40 | $7,853.50 |

### SALE OF ASSETS (40.60 HOURS VALUED AT $17,877.00)

24.    During the Application Period, Seyfarth performed 40.60 hours of services having a value of $17,877.00 on behalf of the Trustee on matters related to the sale of assets, including:

        A.    Conduct initial investigation of sale of Debtor's real estate;

B.     Extensive communications with Debtor's counsel regarding sale of Debtor's

assets;

C.     Draft, review and finalize motion to sell Estate assets and prepare related sale;

attend hearing on same;

D.     Respond to opposition to motion to sell Estate assets; and

E.     Draft review and finalize promissory note, quitclaim deed and bill of sale.

25.     A breakdown of the professionals providing services in this category is as

follows:

| PROFESSIONAL | TITLE | 2013 HOURLY RATE | 2014 HOURLY RATE | 2015 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|---|
| Gus A. Paloian | Partner | $625.00 | $650.00 | $690.00 | 10.10 | $6,462.50 |
| James B. Sowka | Partner | $405.00 | $430.00 | $445.00 | 14.10 | $6,043.00 |
| Bret M. Harper | Associate | $305.00 | $330.00 | $390.00 | 15.50 | $5,115.00 |
| Jennifer M. McManus | Paralegal | $270.00 | $285.00 | $300.00 | 0.90 | $256.50 |
| TOTAL: | | | | | 40.60 | $17,877.00 |

### FEE APPLICATIONS (9.10 HOURS VALUED AT $2,701.50)

26.     During the Application Period, Seyfarth performed 9.10 hours of services worth a

value of $2,701.50 in preparing Seyfarth's first and final fee application which represents

approximately 5.8% of the total fees sought for services rendered during the Application Period.

A breakdown of the professionals providing services in this category is as follows:

9

| PROFESSIONAL | TITLE | 2013 HOURLY RATE | 2014 HOURLY RATE | 2015 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|---|
| Jennifer M. McManus | Paralegal | N/A | $285.00 | $300.00 | $9.10 | $2,701.50 |
| TOTAL: | | | | | $9.10 | $2,701.50 |

### D.  Incurred Expenses

27.     As set forth in attached **Exhibit 3**, Seyfarth advanced 244.20 in Expenses on behalf of the Estate during the Application Period.

28.     A portion of the Expenses consists of in-house photocopying charges, which Seyfarth has voluntarily reduced to $0.10 per page.

29.     Additionally, Seyfarth advanced out-of-pocket expenses on behalf of the Estate for online legal research conducted through Pacer services.  The charges for these expenses are *actual and at cost.*

30.     In this respect, there is no mark-up of the online legal research charges and no profit derived by Seyfarth from them.  Seyfarth ordinarily and customarily passes its discount on such services *through to the client*—in this instance, the Estate—billing the client only what Seyfarth is actually charged for use of the online resources.

31.     The expenses for which Seyfarth seeks reimbursement are representative and typical of the types of expenses that Seyfarth ordinarily and customarily charges its non-bankruptcy clients.  Such expenses are neither taken into consideration in determining, nor built as "overhead" into, Seyfarth's hourly rates.

32.      Instead, Seyfarth generally adheres to the so-called "user fee" billing system for out-of-pocket expenses—that is, Seyfarth charges expenses to the particular clients who use them, in this instance the Estate, at cost.

## V.  RELIEF REQUESTED

33.      Seyfarth respectfully requests that the Court:  (i) allow and award it on an interim basis (1) the Fees, consisting of $38,161.00 for legal services rendered to the Trustee, and (2) the Expenses, in the amount of $244.20, incurred in relation to such services (collectively, the "Requested Fees and Expenses");  and (ii) authorize the Trustee to draw from the Advance and make prompt payment of the Requested Fees and Expenses to Seyfarth.

34.      A proposed order providing for the requested relief is attached hereto for the Court's consideration.

## VI.  BASIS FOR THE REQUESTED RELIEF

### A.  Compensation Standards

35.      Pursuant to Section 331 of the Bankruptcy Code, a professional person employed under Section 327 may generally apply for interim compensation from a bankruptcy court.  See 11 U.S.C. § 331.  Under Section 330(a)(1)(A), the Court may then award the professional person "reasonable compensation for actual, necessary services rendered[.]" 11 U.S.C.

36.      § 330(a)(1)(A).

37.      In determining the "extent and value of compensation," this Court has endorsed and applied the "'lodestar' approach—multiplying the number of actual and necessary hours reasonably expended by a reasonable hourly rate[.]" *In re* Wildman, 72 B.R. 700, 712 (Bankr. N.D. Ill. 1987) (Schmetterer, J.); *accord In re* UNR Indus., Inc., 986 F.2d 207, 210-11 (7th Cir. 1993) (lodestar approach provides fair compensation under Section 330); see also City of Burlington v. Dague, 505 U.S. 557, 562, 112 S. Ct. 2638, 2641, 120 L. Ed. 2d 449 (1992) ("The

11

'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence. We have established a 'strong presumption' that the lodestar represents the 'reasonable' fee[.]").

38. To arrive at an attorney's reasonable hourly rate, the Seventh Circuit has "emphasize[d] that section 330 . . . *requires* lawyers in bankruptcy matters to receive the same compensation as they would earn in performing similar services outside the context of bankruptcy."[1] *In re* UNR Indus., Inc., 986 F.2d at 210 (emphasis added). The statutory aim is twofold: (A) "that attorneys be reasonably compensated," and (B) "that future attorneys not be deterred from taking bankruptcy cases due to a failure to pay adequate compensation." UNR Indus., Inc., supra; see also *In re* Farley, Inc., 156 B.R. at 210 ("The purpose of § 330 was to encourage bankruptcy practitioners not to leave the field in favor of more lucrative areas of the law.") (citing legislative history to Section 330).

39. As a cornerstone of this market rate approach, the Seventh Circuit has repeatedly "stressed that the best measure of the cost of an attorney's time is what that attorney could earn from paying clients"—that is, the attorney's "standard hourly rate." Gusman v. Unisys Corp., 986 F.2d 1146, 1150 (7th Cir. 1993); see Small v. Richard Wolf Med. Instruments Corp., 264 F.3d 702, 707 (7th Cir. 2001) ("The attorney is entitled to his market rate and not some 'medieval just price' determined by the court.") (quoting Steinlauf v. Continental Ill. Corp. (*In re* Continental Ill. Sec. Litig.), 962 F.2d 566, 568 (7th Cir. 1992)).

---

[1] "In section 330 and its legislative history Congress expressed its intent that compensation in bankruptcy matters be commensurate with the fees awarded for comparable services in non-bankruptcy cases." In re UNR Indus., Inc., 986 F.2d at 208-09; see In re Farley, Inc., 156 B.R. 203, 210 (Bankr. N.D. Ill. 1993) (Schmetterer, J.) (quoting same).

40.     Therefore, the Seventh Circuit has mandated that an "attorney's actual billing rate

. . . is considered to be the presumptive market rate." Small, 264 F.3d at 707.  Moreover, "[t]he

lawyer's regular rate is *strongly presumed* to be the market rate for his or her services." Moriarty

v. Svec, 233 F.3d 955, 965 (7th Cir. 2000) (emphasis added), cert. denied, 532 U.S. 1066, 121 S.

Ct. 2216, 150 L. Ed. 2d 209 (2001);  see Moriarty v. Svec, 429 F.3d 710, 718 (7th Cir. 2005)

(quoting same);  see also Central States, S.E. & S.W. Areas Pension Fund v. Central Cartage Co.,

76 F.3d 114, 116 (7th Cir.) ("[A] lawyer's regular hourly fee, one counsel would charge 'to the

meanest villain', *is* the market rate for that lawyer's services.") (emphasis added and quoting

Barrow v. Falck, 977 F.2d 1100, 1106 (7th Cir. 1992)), cert. denied sub nom. Mason & Dixon

Lines v. Central States, S.E. & S.W. Areas Pension Fund, 519 U.S. 811, 117 S. Ct. 56, 136 L.

Ed. 2d 19 (1996).

41.     Under this principle, "lawyers who fetch above-average rates are presumptively

entitled to them, rather than to some rate devised by the court." Gusman, 986 F.2d at 1150;

accord *In re* Spanjer Bros., Inc., 191 B.R. 738, 755 (Bankr. N.D. Ill. 1996) (Squires, J.)

("Generally, so long as the rates being charged are the applicant's normal rates charged in

bankruptcy and non-bankruptcy matters alike, they will be afforded a presumption of

reasonableness.").

42.     "Only if an attorney is unable to provide evidence of her actual billing rates

should a [ ] court look to other evidence, including 'rates similar experienced attorneys in the

community charge paying clients for similar work.'" Mathur v. Board of Trs. of S. Ill. Univ.,

317 F.3d 738, 743 (7th Cir. 2003) (quoting Spegon v. Catholic Bishop of Chicago, 175 F.3d 544,

555 (7th Cir. 1999));  see also Gusman, 986 F.2d at 1151 ("the ability to identify a different

average rate in the community" is an impermissible reason to depart from an attorney's billing rate).

43.     Accordingly, because Seyfarth bills the vast majority of its time at a set rate for paying clients and spends only a very small percentage of time on cases covered by fee-shifting statutes, "there is a strong presumption that such counsel could have billed out remaining time at the rate normally charged." *In re Farley, Inc.*, 156 B.R. at 211.

44.     Additionally, under generally accepted standards, if the services of an attorney employed under Section 327 are reasonably likely to benefit a debtor's estate, they should be compensable. See Andrews & Kurth L.L.P. v. Family Snacks, Inc. (*In re Pro-Snax Distributors, Inc.*),157 F.3d 414, 421 (5th Cir. 1998); *In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 71 (2d Cir. 1996); 2 Lawrence P. King, Collier on Bankruptcy ¶ 330.04 at 330-43 (15th ed. rev. 1999); cf. 11 U.S.C. § 330(a)(4)(A)(ii)(I). In this same context, "[n]ecessary services are those that aid the professional's client in fulfilling its duties under the Code." *In re Ben Franklin Retail Store, Inc.*, 227 B.R. 268, 270 (Bankr. N.D. Ill. 1998) (Barliant, J.).

45.     Thus, the determination of benefit to the Estate is not constrained to a dollar-for-dollar measurement, such that each dollar's worth of legal services must bring a cash dollar into the Estate in order to justify equivalent compensation to counsel. See *In re Lifschultz Fast Freight, Inc.*, 140 B.R. 482, 488 (Bankr. N.D. Ill. 1992) (Barliant, J.) ("Necessary services have always included services that aid in the administration of the case and help the client fulfill duties under bankruptcy law, whether or not those services result in a monetary benefit to the estate."); accord *In re Rite Way Reproductions, Inc.*, 1998 Bankr. LEXIS 1080, at *6-*7 (Bankr. N.D. Ill. Aug. 27, 1998) (Squires, J.) (concurring and further observing that "factors other than the economic impact on the estate of actions taken should be considered in the 'benefit to the estate'

14

analysis"); *In re* Caribou P'ship III, 152 B.R. 733, 742 (Bankr. N.D. Ind. 1993) (same); see,

e.g., Ben Franklin Retail Store, Inc., supra ("[A] trustee (or interim trustee) performs necessary

services when he carries out the duties set forth in § 704 of the Code."); JMP-Newcor Int'l, Inc.

v. Seyfarth, Shaw, Fairweather & Geraldson (*In re* JMP-Newcor Int'l, Inc.), 1998 U.S. Dist.

LEXIS 987, at *13 (N.D. Ill. Jan. 23, 1998) (affirming bankruptcy court's award of fees to firm

for advising committee in reasonable way and in good faith despite lack of direct monetary

benefit to debtor and estate).

46.    Instead, other factors, such as "whether the services rendered promoted the

bankruptcy process or administration of the estate in accordance with the practice and procedures

provided under the Bankruptcy Code and Rules for the orderly and prompt disposition of

bankruptcy case and related adversary proceedings," also support awards of compensation. *In re*

Spanjer Bros., Inc., 191 B.R. at 748.

47.    As previously stated, the legal services for which Seyfarth requests allowance and

payment of compensation relate to the Application Period, and were rendered in connection with

the Case and in the discharge of Seyfarth's professional responsibilities as counsel to the Trustee

during that time.

48.    Seyfarth respectfully submits that such legal services have, in all respects, been

reasonable, necessary, and beneficial to the Estate.  In this connection, these services were

performed within a reasonable amount of time commensurate with the complexity, importance,

and nature of the matters which they concerned.

49.    Further, they promoted the bankruptcy process and the administration of the

Estate and supported the Trustee in fulfilling his statutory duties, all in accordance with the

Bankruptcy Code and Rules.

50.    For purposes of this Application, Seyfarth has computed the Fees on the basis of its discounted hourly rates applicable to the performance of bankruptcy legal services unrelated to the Case at the time that such services were rendered.

51.    Seyfarth's average hourly billing rate for its attorneys—that is, its "lodestar" rate—during the Application Period was $456.93.

52.    During the Application Period, Seyfarth's discounted hourly billing rates for professionals providing services in the Case ranged from:  (A) $305.00 to $650.00 for attorneys, and (B) $90.00 to $295.00 for paralegals or para-professionals.  Based upon all of the foregoing, Seyfarth respectfully submits that the fair and reasonable value of the legal services that it rendered during the Application Period is $38,161.00.

53.    In all these respects, the compensation which Seyfarth has requested herein is reasonable based upon the customary compensation charged by comparably-skilled practitioners in either non-bankruptcy or bankruptcy cases.

54.    Moreover, it is less than the fees which Seyfarth would have received for providing legal services to its non-bankruptcy clients, and thus represents even less than its lost opportunity costs for such non-bankruptcy services because Seyfarth's acceptance of employment by the Trustee in the Case precluded such employment.

55.    In rendering legal services to the Trustee, and in making this Application, Seyfarth respectfully submits that it has exercised its good faith billing judgment, and has not sought compensation for "excessive, redundant, or otherwise unnecessary" time.  Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40, 76 L. Ed. 2d 40 (1983).

56.    Finally, and with respect to whether Seyfarth has demonstrated skill and experience in the bankruptcy field pursuant to 11 U.S.C. § 330(a)(3)(E) (2006), Seyfarth has

attached its Attorney Biographical Information as Exhibit 1.  The Attorney Biographical

Information sets forth the qualifications of the Seyfarth attorneys listed herein, including their

demonstrated skill and experience in the bankruptcy field, both in the local Chicago market and

in representation of clients in matters nationwide.

### B.  Expense Reimbursement Standards

57.    With respect to reimbursing expenses, the Court may award a professional person

"reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1)(B).

58.    "An expense is necessary if it was incurred because it was required to accomplish

the proper representation of the client." *In re* Spanjer Bros., Inc., 191 B.R. at 749;  see *In re*

Wildman, 72 B.R. at 731.

59.    In this connection, Seyfarth has requested reimbursement only for actual and

necessary expenses incurred on the Trustee's behalf.  Seyfarth respectfully submits that these

expenses were incurred because they were required to accomplish the proper representation of

the Trustee and the furtherance of the Estate's interests in the Case.  As previously indicated,

Seyfarth voluntarily reduced and limited its costs for photocopy expenses.

60.    Seyfarth submits that the Expenses are reimbursable and do not constitute

"overhead," which the Court discussed and described, as follows:

> Expenses which are overhead are not compensable because they are not built into
> the normal hourly rate charged by the billing professional. Convent Guardian,
> 103 Bankr. at 939;  Wildman, 72 Bankr. at 731.  Overhead expenses include "all
> continuous administrative or general costs or expenses incident to the operation of
> the firm which cannot be attributed to a particular client or cost." *In re* Thacker,
> 48 Bankr. 161, 164 (Bankr. N.D. Ill. 1985) (quoting Jensen-Farley Pictures, 47
> Bankr. at 584)[2].

---

[2] In re GSB Liquidating Corp., 1995 Bankr. LEXIS 1245, at *41 (Bankr. N.D. Ill. Aug. 21, 1995)
(Squires, J.);  see In re Adventist Living Ctrs., Inc., 137 B.R. 701, 719 (Bankr. N.D. Ill. 1991) (Sonderby,
J.) ("Expenses which are overhead and which are included in the hourly rate are not compensable.");  see

61.     In contrast, Seyfarth charges for its out-of-pocket expenses only, including the

incurred Expenses, to the particular clients who use them—in this instance, the Estate. As

previously discussed, the incurred Expenses included herein are neither taken into consideration

in determining, nor built as "overhead" into, Seyfarth's hourly rates.

62.     Such "user fee" expense billing closely adheres to the Seventh Circuit's market

rate billing approach. In this respect, the Seventh Circuit's market approach to compensation

extends equally to the reimbursement of expenses, including those for online research. See *In re*

*Hunt's Health Care, Inc.*, 161 B.R. 971, 978 (Bankr. N.D. Ind. 1993); accord *In re Hillsborough*

*Holdings Corp.*, 127 F.3d at 1403-04 ("[I]f the cost of comparable services is a relevant factor in

setting compensation for services under [330](a)(1), it would logically seem also to be a relevant

factor in determining what categories to treat as reimbursable expenses under (a)(2).").

63.     For example, in Continental Illinois Securities, supra, the Seventh Circuit

reversed, and markedly criticized, the district court for disallowing online research expenses:

> The judge refused to allow the lawyers to bill any of their out-of-pocket
> expenses of using a computerized legal research service (LEXIS). He thought
> those expenses should be part of the lawyers' overhead. This was another clear
> error. If computerized research expenses were customarily treated in this fashion,
> lawyers' hourly rates would be even higher than they are, requiring an adjustment
> in the lodestar. *But the more important point is that the market—the paying,
> arms' length market—reimburses lawyers' LEXIS and WESTLAW expenses, just
> as it reimburses their paralegal expenses, rather than requiring that these items
> be folded into overhead.* Markets know market values better than judges do. And
> as with paralegals, so with computerized research: if reimbursement at market
> rates is disallowed, the effect will be to induce lawyers to substitute their own,

---

also 2 Lawrence P. King, Collier on Bankruptcy ¶ 330.05 at 3-330 (15th ed. rev. LEXIS 2006)
("Nonreimbursable overhead has been defined as regular administrative and general expenses incident to
the operation of a business that cannot be attributed to a particular client or cost."); see, e.g., Stroock &
Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.), 127 F.3d 1398,
1402 (11th Cir. 1997) ("We accept that true 'overhead' costs—the ordinary operating costs of a firm, *such
as rent, heat, and the like,* that cannot readily be attributed to a particular case—are not separately
compensable as reimbursable expenses.") (emphasis added)

more expensive time for that of the paralegal or the computer, 962 F.2d at 570 (emphasis added); accord Harman v. Lyphomed, Inc., 945 F.2d 969, 976 (7th Cir. 1991) ("The attorneys also claim that the court erred in excluding the roughly $10,000 expended in computer-assisted research. The court felt that the expense 'is part of the amount allowed for attorney's fees.' *We must reverse the district court here*. Computer-assisted research fees—so long as reasonably incurred—in theory reduce the number of attorney hours otherwise needed for (presumably) more time-consuming manual research and are therefore compensable[. . . . as] expenses[.]") (emphasis added).

64.     The Seventh Circuit has remained consistent on this subject and has repeatedly required attorney reimbursement for computerized legal research charges. See, e.g., Uniroyal Goodrich Tire Co. v. Mutual Trading Corp., 63 F.3d 516, 526 (7th Cir. 1995) ("Before we turn our attention to the award of costs, we consider MTC's request that the costs of computerized legal research be subtracted from the award. *MTC claims that these expenses are better characterized as overhead in the same way that maintenance of a law firm library is. We reject this claim*.") (emphasis added), cert. denied, 516 U.S. 1115, 116 S. Ct. 916, 133 L. Ed. 2d 846 (1996).

65.     Accordingly, lower courts in this District—including numerous judges of this Court—have adhered to this controlling precedent. See, e.g., Shula v. Lawent, 2004 U.S. Dist. LEXIS 17662, at *7-*8 (N.D. Ill. Sept. 2, 2004) (Keys, J.) (fully allowing "computerized legal research charges" as "costs" that were "both reasonable and necessary"); Stamm v. Provident Life & Accident Ins. Co., 2000 U.S. Dist. LEXIS 5521, at *6 (N.D. Ill. Apr. 7, 2000) (Plunkett, J.) ("The Seventh Circuit has held that computerized legal research is reimbursable as a reasonable expense of litigation."); *In re* Price, 143 B.R. 190, 199 (Bankr. N.D. Ill. 1992) (Squires, J.) (allowing full reimbursement of Lexis expense), aff'd sub nom. Price v. United States (*In re* Price), 42 F.3d 1068 (7th Cir. 1994); *In re* Met-L-Wood Corp., 103 B.R. 972, 977 (Bankr. N.D. Ill. 1989) (Coar, J.) (allowing full reimbursement of computer research charges as "'actual and necessary' expenses"), aff'd, 115 B.R. 133 (N.D. Ill. 1990); *In re* Prairie Cent. Ry.

19

Co., 87 B.R. 952, 960 (Bankr. N.D. Ill. 1988) (Squires, J.) (following earlier opinions of the

Court to allow reimbursement of Lexis and Westlaw research charges); *In re* Wildman, 72 B.R.

at 732 ("This Court adopts the view that computer research time that is both necessary and

attributable to a particular client *or* case is reimbursable under Section 330(a)(2).") (emphasis in

the original); *In re* UAL Corp., Case No. 02-48191-ERW (Wedoff, C.J.), *Order Approving*

*Quarterly Application Of Vedder, Price, Kaufman & Kammholz, P.C. For Allowance And*

*Payment Of Compensation And Reimbursement Of Expenses* (Docket No. 15670) (allowing full

reimbursement of $8,085.93 in online legal research charges); *In re* Eagle Food Centers, Inc.,

Case No. 03-15299-CAD (Doyle, J.), *Order Approving Third And Final Application Of Skadden,*

*Arps, Slate, Meagher & Flom LLP Seeking Final Allowance And Payment Of Compensation And*

*Reimbursement Of Expenses* (Docket No. 1136) (allowing full expense reimbursement of

$21,888 in "Computer Legal Research" during case period) (unpublished decision); *In re*

Conseco, Inc., Case No. 02-49672-CAD (Doyle, J.), *Order Approving Final Application Of*

*Jenner & Block LLP For Allowance Of Administrative Claim For Compensation And*

*Reimbursement Of Expenses* (Docket No. 6987) (allowing expense reimbursement of

$139,934.07, including Westlaw and Lexis charges); *In re* Wickes, Inc., Case No. 04-02221-

BWB (Black, J.), *Findings Of Fact And Conclusions Of Law In Support Of Order Awarding To*

*DLA Piper Rudnick Gray Cary US LLP, Attorneys For Wickes, Inc., For Allowance And*

*Payment Of Interim Compensation And Reimbursement Of Expenses* (Docket No. 2935)

(allowing expense reimbursement of $15,505.32, including Westlaw and Lexis charges).

      66.    Finally, in seeking reimbursement for such costs, the Seventh Circuit has laid

down guidelines, and cautioned, that an applicant "[is] not required to submit a bill of costs

containing a description so detailed as to make it impossible economically to recover [ ] costs[,

but] [r]ather [ ] [is] required to provide the best breakdown obtainable from retained records."

<u>Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.</u>, 924 F.2d 633, 643 (7th Cir.

1991).

67.    In seeking reimbursement for the Expenses herein, Seyfarth has made every

attempt to fully comply with these dictates.

## VII. <u>NOTICE</u>

68.    Twenty-one days' notice of this Application, and service of the Application, has

been provided to the Office of the United States Trustee, in care of Denise A. Delaurent.

69.    Seyfarth respectfully requests that the above-notice (the "<u>Notice</u>") be deemed

adequate and that the Court find that no other or further notice is necessary.

## VIII. <u>NO PRIOR REQUEST</u>

70.    No prior request for the relief requested by this Application has been made to this

Court or to any other court.

WHEREFORE Seyfarth Shaw LLP respectfully requests that the Court enter an Order:

A.    Finding Notice of the Application sufficient as given and that no other or

further notice is necessary;

B.    Allowing and awarding Seyfarth on a final basis the Requested Fees and

Expenses;

C.    Authorizing the Trustee to make payment of such Fees and Expenses to

Seyfarth from the Estate, and

D.   Granting such other and further relief as this Court deems just and

appropriate.

Dated:  August __, 2015

Respectfully submitted,

GUS A. PALOIAN, not individually or
personally, but solely in his capacity as the
Chapter 7 Trustee of Debtor's Estate

By:/s/ James B. Sowka _____
   Gus A. Paloian (6188186)
   gpaloian@seyfarth.com
   James B. Sowka (6291998)
   jsowka@seyfarth.com
   Bret M. Harper (6299968)
   bharper@seyfarth.com
   SEYFARTH SHAW LLP
   131 South Dearborn Street, Suite 2400
   Chicago, Illinois 60603
   Telephone:  (312) 460-5000
   *Counsel to Chapter 7 Trustee Gus A.
   Paloian*

# EXHIBIT 1

SEYFARTH
    SHAW



### Gus A. Paloian
*Partner*
Chicago
Direct: (312) 460-5936
Fax: (312) 460-7936
gpaloian@seyfarth.com | vCard

## Biography

**Practices & Sectors**

Bankruptcy, Workouts & Business Reorganization

Bankruptcy Litigation

Distressed Transactions

Non-Bankruptcy Remedies

Commercial Litigation

Real Estate

Mr. Paloian is a partner with a practice emphasis in creditors' rights, bankruptcy, and financial litigation.  Prior to joining the firm in 1985, Mr. Paloian clerked for the Honorable Frederick J. Hertz, United States Bankruptcy Judge for the Northern District of Illinois, Eastern Division.

In bankruptcy matters, Mr. Paloian often represents national banks and finance companies enforcing their remedies and defending their rights.  He represents financial institutions in cases involving debtors in various segments of the manufacturing and service industries and has extensive experience representing financial institutions in real estate bankruptcies, including health club/sporting facilities, office buildings, retail, manufacturing, and warehousing facilities.  Mr. Paloian also represents companies in various industries that have experienced financial problems and seek to restructure their financial problems under the Bankruptcy Code.  Mr. Paloian was the lead bankruptcy counsel for the Chicago South Shore and South Bend Railroad in its bankruptcy proceedings.  He also has extensive experience representing trustees in complex bankruptcy cases.   Mr. Paloian also serves as a bankruptcy trustee and is a member of the Panel of Trustees for the Northern District of Illinois, Eastern Division.

### Education

- J.D., DePaul University College of Law (1984)
  *cum laude*
- B.A., Northwestern University (1981)
- Certified Lean Six Sigma Yellow Belt

### Admissions

- Illinois

### Affiliations

- American Bankruptcy Institute
- Turn Around Management Association
- National Association of Bankruptcy Trustees
- Chicago Bar Association (Bankruptcy Committee)
- Illinois Bar Association

"Seyfarth Shaw" refers to Seyfarth Shaw LLP (an Illinois limited liability partnership). © 2015 Seyfarth Shaw LLP. All rights reserved. Prior results do not guarantee a similar outcome.

SEYFARTH
    SHAW

- American Bar Association

## Representative Engagements

- *Buddha Entertainment, LLC v. Paloian*, 12 C 5059 (N.D. Ill. 2012)
- *Paloian v. Geneva Seal, Inc. (In re Canopy Fin., Inc.)*, 12 C 145, 12 C 147 (N.D. Ill. 2012)
- *In re River West Plaza-Chicago, LLC.*, 664 F 3d 668 U.S. App. (7th Cir. 2011)
- *Schwab v. River West-Chicago, LLC (In re River West Plaza-Chicago, LLC.)* 10 C 7277 (N.D. Ill 2011)
- *Paloian v. American Express Co. (In re Canopy Fin., Inc.)*, 11C 5360 (N.D. Ill. 2011)
- *Paloian v. Grupo Serla S.A. de C.V.*, 07 C 396 (N.D. Ill. 2010)
- *Paloian v. LaSalle Bank, N.A.*, 619 F.3d 688 U.S. App. (7th Cir. 2010)
- *In re Shethi*, 07 B 05886 (N.D. Ill. 2008)
- *Paloian v. Grupo Serla S.A. de C.V. (In re GGSI Liquidation, Inc.)*, 01 B 31751 (N.D. Ill. 2006)
- *Corporate Assets, Inc. v. Paloian*, 368 F.3d 761 U.S. App. (7th Cir. 2004)
- *In re Chavin*, 150 F.3d 726 U.S. App. (7th Cir. 1998)
- *In re 801 South Wells Street Limited Partnership*, 192 BR 718 (Bankr. N.D. Ill. 1996)
- *In re Sardo Corporation (Borock as Trustee v. Turner Construction Company)*, 1996 WL 362756 (Bankr. N.D. Ill. 1996)
- *Northern Trust v. VIII S. Michigan Assoc.*, 276 Ill. App. 3d 355, 657 N.E 2d 1095 (1st Dist. 1995)
- *Zerand-Bernal Group v. Cox*, 23 F.3d 159 U.S. App. (7th Cir. 1994)
- *In re VIII South Michigan Associates*, 145 B.R. 912 (N.D. Ill. 1992)
- *In Re: William Thomas Billings (Irving Federal Savings and Loan Assoc.)* 146 B.R. 431 (Bankr. N.D. Ill. 1992)
- *Home Savings Association of Kansas City, F.A. v. State Bank of Woodstock*, 763 F. Supp. 292 (N.D. Ill 1991)
- *In re William J. Stoecker (Citibank, N.A. v. Park Kenilworth Industries)*, 109 B.R. 321 (N.D. Ill. 1989)

SEYFARTH
    SHAW



**James B. Sowka**
*Partner*
Chicago
Direct: (312) 460-5325
Fax: (312) 460-7325
jsowka@seyfarth.com | vCard

## Biography

**Practices & Sectors**

Bankruptcy, Workouts & Business Reorganization

Bankruptcy Litigation

Debtor Representation

Non-Bankruptcy Remedies

Distressed Transactions

Commercial Litigation

Real Estate Litigation

Mr. Sowka is a partner in the Chicago office of Seyfarth Shaw LLP. He practices in the areas of bankruptcy law, creditor rights, receiverships, and commercial and real estate litigation in both federal and state court. Mr. Sowka represents debtors, secured lenders, trade creditors, insurers, chapter 7 and chapter 11 bankruptcy trustees, and preference and fraudulent transfer defendants among others. His bankruptcy litigation experience includes contested cash collateral hearings, plan confirmation hearings, and bankruptcy trustee elections, motions for the appointment of chapter 11 trustees and for conversion and dismissal of chapter 7 and 11 cases, claims objections, and denial of discharge and dischargeability actions. Mr. Sowka also advises employers with respect to the impact of bankruptcy filings on retirement and benefit plans, non-compete agreements, protection of trade secrets, and other matters.

Mr. Sowka has earned a Martindale-Hubbell Peer Review rating of AV Preeminent®. He is a member of the Seyfarth*Lean* initiative for landlord-tenant issues in retail bankruptcy cases. Seyfarth*Lean* adopts Lean Six Sigma methodologies through application of technology and a process-driven methodology that involves mapping the delivery of services in order to identify efficiencies and to better predict costs for our clients. In 2015, he was appointed for a two-year term on the Bankruptcy Court Liaison Committee for the Northern District of Illinois, which fosters communication and information sharing between the local bench and bar, as well as education programs in the district. In 2011, Mr. Sowka was selected to participate in the National Conference of Bankruptcy Judges Next Generation Program for up-and-coming bankruptcy attorneys.

Prior to joining the firm, Mr. Sowka worked as a trial attorney for the U.S. Department of Justice, Office of the U.S. Trustee in Chicago and Miami, Florida where he gained significant experience with bankruptcy asset sales, chapter 11 plan confirmations, chapter 11 trustee and examiner appointments, denial of discharge actions, and investigation and prosecution of bankruptcy fraud and abuse, including Ponzi schemes, bust-outs, and identity theft.

Mr. Sowka is also involved in the local community and currently serves as an officer and director for Friends of Pulaski, a not-for-profit organization that supports Pulaski International School - a public elementary school in Chicago offering an International Baccalaureate based curriculum.

### Education

- J.D., University of Arizona College of Law (2004)
- B.A., University of Illinois (1998)
  Phi Kappa Phi; College Honors

Seyfarth Shaw refers to Seyfarth Shaw LLP (an Illinois limited liability partnership). ©2015 Seyfarth Shaw LLP. All rights reserved. Prior results do not guarantee a similar outcome.

SEYFARTH
        SHAW

## Admissions

* Florida
* Illinois

## Courts

* U.S. Court of Appeals for the Seventh Circuit
* U.S. District Court for the Northern District of Illinois
* U.S. District Court for the Southern District of Florida
* U.S. District Court for the Middle District of Florida

## Affiliations

Bankruptcy Court Liaison Committee, Northern District of Illinois
Committee Member (2015-2017)

Friends of Pulaski

* Officer and Director (2012-2015)

Chicago Bar Association

* Director, Young Lawyers Section (2011-2013)
* Co-Chair, Young Lawyers Section Bankruptcy Committee (2008-2011)

Bankruptcy Court Liaison Committee, Northern District of Illinois

* Representative of the Office of the U.S. Trustee (2007-2008)

American Bankruptcy Institute

## Representative Engagements

* Representation of unsecured creditors in chapter 7 dischargeability action based on RICO judgment exceeding $400 million.  Obtained favorable verdict on summary judgment.
* Representation of chapter 11 trustee with respect to operation and reorganization of commercial real estate holding company with ownership interests in more than 50 non-debtor entities and land trusts holding title to more than 70 parcels of real property. Negotiated settlements with various insiders resulting in recovery of more than $8 million in disputed pre-petition transfers of cash and other assets.
* Representation of chapter 7 trustee in wind-down of Ponzi scheme involving technology company with more than $100 million in claims.  Assisted in obtaining recoveries in excess of $80 million through prosecution and settlement of fraudulent transfer and breach of fiduciary duty actions and the sale of assets.
* Representation of global restaurant equipment manufacturer in state court receivership action initiated against restaurant equipment distribution company.  Obtained allowance of claims and favorable resolution of objections to sale of company.
* Representation of large, commercial bank in individual chapter 11 bankruptcy case involving over $100 million in real estate related claims.  Successfully obtained appointment of chapter 11 trustee and favorable settlement involving over $16.5 million in disputed state and federal income tax refunds.
* Representation of national insurance company in individual chapter 7 bankruptcy.  In case of first impression, obtained denial of debtor's claimed exemption in non-qualified ERISA Supplemental Executive Retirement Plan

Seyfarth Shaw refers to Seyfarth Shaw LLP (an Illinois limited liability partnership). ©2015 Seyfarth Shaw LLP. All rights reserved. Prior results do not guarantee a similar outcome.



- Representation of petitioning creditors in involuntary chapter 7 bankruptcy proceeding against defunct regional grocery store chain which resulted in entry of order for relief and commencement of chapter 7 bankruptcy case.

- Representation of large, commercial bank in $26 million single asset real estate bankruptcy. Prevailed in objecting to confirmation of debtor's chapter 11 plan following two-day trial; later secured confirmation of joint chapter 11 plan of liquidation with debtor, and obtained order recharacterizing $17.5 million insider claim as equity and successfully defended appeal to the Seventh Circuit Court of Appeals regarding same.

- Representation of chapter 7 trustee in wind-down of operating logistics and warehouse company with two facilities totaling over 615,000 sq. ft. in space, liquidation of inventory and personal property, and sale of real property.

- Representation of national insurance company in chapter 11 asbestos bankruptcy case involving contested plan confirmation which resulted in multimillion dollar settlement agreement.

- Representation of secured lender in $40 million single asset real estate bankruptcy. Obtained confirmation of joint plan of liquidation with chapter 11 trustee and sale of real property.

## Presentations

- "Professional Ethics in Bankruptcy" Chicago Bar Association Young Lawyers Section Joint Bankruptcy & Professional Responsibility Committee Meeting (April 18, 2014)

- "Commercial Real Estate in Distress" Chicago Bar Association Young Lawyers Section Bankruptcy Seminar (October 7, 2010)

- "Mortgage Fraud," presented by the Office of the United States Trustee, Chicago Bar Association Young Lawyers Section Bankruptcy Committee Meeting (2008)

## Publications

- Co-Author, "Recharacterization: The Debate," *The Bankruptcy Strategist* (November 2013)

- Co-Author, "Seventh Circuit clarifies an 'insider' process, in 'new value' Chapter 11 plans," *Management Alert*, Seyfarth Shaw LLP (July 31, 2013)

- Co-Author, "Bankruptcy Court Applies Third Circuit test for addressing 'debt' versus 'equity' question," *One Minute Memo*, Seyfarth Shaw LLP (July 25, 2013)

- Author, "U.S. Supreme Court Resolves Circuit Split In Favor Of Secured Lenders' Credit-Bid Rights In Chapter 11 Bankruptcy Cases," *One Minute Memo*, Seyfarth Shaw LLP (June 4, 2012)

- Co-author, "Not All Retirement Plans Are Created Equal - ERISA Top-Hat Plans Constitute Property of the Bankruptcy Estate," *American Bankruptcy Institute Journal* (September 2011)

- Co-author, "Seventh Circuit Upholds Secured Lenders' Credit Bid Rights In Chapter 11 Bankruptcy," *One Minute Memo*, Seyfarth Shaw LLP (July 13, 2011)

- Co-author, "Lenders' Right to Credit Bid Tested Before 7th Circuit," *The National Law Journal* (November 29, 2010)

"Seyfarth Shaw" refers to Seyfarth Shaw LLP (an Illinois limited liability partnership). ©2015 Seyfarth Shaw LLP. All rights reserved. Prior results do not guarantee a similar outcome.

SEYFARTH
SHAW



### Christopher J. Harney
*Associate*
Chicago
Direct: (312) 460-5246
Fax: (312) 460-7246
charney@seyfarth.com | vCard

## Biography

**Practices & Sectors**

Bankruptcy,
Workouts &
Business
Reorganization

Debtor
Representation

Commercial Litigation

Non-Bankruptcy
Remedies

Distressed
Transactions

Bankruptcy Litigation

Mr. Harney is an associate in the Litigation Department of Seyfarth Shaw LLP. Mr. Harney concentrates his practice in areas of bankruptcy law and litigation, creditor rights, corporate reorganizations, pre-bankruptcy planning and negotiations, breach of fiduciary duty and fraudulent transfer actions, and complex commercial and real estate litigation. He has represented clients in both state and federal courts and his client representations include debtors, secured lenders, unsecured creditors, insurers, chapter 7 and chapter 11 bankruptcy trustees. He also has litigation experience in construction law, breach of contract matters, mortgage foreclosures, premises-liability, intellectual property, and collection matters.

Mr. Harney has been identified as a "Rising Star" by Illinois Super Lawyers in 2014. He was also the recipient of Award of Excellence in Pro Bono Service issued by the United States District Court of the Northern District of Illinois in conjunction with the Chicago Chapter of the Federal Bar Association. He serves as a co-chair for the Bankruptcy Committee of the Young Lawyers Section of the Chicago Bar Association. He is also an active board member of the Young Professionals Board of the Chicago Bar Foundation, the charitable arm of the Chicago Bar Association and is one of the wrestling team representatives for the Graduate "Order of the C," an alumni association of the University of Chicago. Further, he was the chair of Seyfarth Shaw's Associates Committee for the Investing In Justice Campaign.

### Education

- J.D., University of Mississippi (2008)
  *cum laude*
  Member, Moot Court Team and Moot Court Membership Committee
  Moss Scholarship Recipient, 2006-2007
  Semifinalist in State of Mississippi Appellate Advocacy Competition
- B.A., University of Chicago (2004)
  Chicago Police/Fire Full-Tuition Merit Scholarship, 2000-2004
  Dean's List, 2000-2003

### Admissions

- Illinois

### Courts

- Illinois Supreme Court
- U.S. District Courts for the Northern District of Illinois

SEYFARTH
SHAW

### Affiliations

Chicago Bar Association

- Co-Chair, Young Lawyers Section Bankruptcy Committee (2011-present)

Chicago Bar Foundation

- Member, Young Professionals Board (2011-present)

University of Chicago's Order of the C

- Wrestling Team Representative (2011-present)

American Bankruptcy Institute

### Presentations

- Moderator, "What Every Bankruptcy Practitioner Should Know About Exceptions to Discharge (§ 523) and Denial of Discharge (§ 727) (June 2012)
- Co-presenter, "Practice Pointers in Preference Litigation," Chicago Bar Association (April 2011)
- Presenter, "Underwater Stock Options," Legal Seminar sponsored by the Illinois Paralegal Association, Chicago, IL (May 2009)

### Publications

- "Austin, Texas Paves the Way to Expansion of Green Building," *Green Space Today* (April 2009)

SEYFARTH
SHAW



### Bret M. Harper
*Associate*
Chicago
Direct: (312) 460-5652
Fax: (312) 460-7952
bharper@seyfarth.com | vCard

## Biography

**Practices & Sectors**

Bankruptcy,
Workouts &
Business
Reorganization

Commercial Litigation

Bankruptcy Litigation

Distressed
Transactions

Bret M. Harper is an associate in the Litigation department in the Chicago office of Seyfarth Shaw LLP.

Mr. Harper concentrates his practice on bankruptcy and workouts of distressed loans. He has represented debtors, receivers, secured creditors, trade creditors, bondholders, indenture trustees, and acquirers of distressed businesses both in court and out of court in matters involving bankruptcy litigation, workouts, restructurings, and enforcement of state law remedies. Mr. Harper also has experience representing financial institutions and other asset-based lenders in non-distressed financing transactions.

### Education

- J.D., New York University School of Law (2008)
  Articles Editor, *NYU Journal of Legislation and Public Policy*
- B.A. with honors, Northwestern University (2004)
  Hardy Scholar

### Admissions

- Illinois
- Wisconsin

### Courts

- U.S. District Courts for the Northern District of Illinois
- U.S. District Courts for the Eastern and Southern Districts of New York

### Publications

- Co-author, "State Law Offers an Alternative to Chapter 11," *National Law Journal* (Special Report) (Nov. 29, 2010)

# EXHIBIT 2

## CASE ADMINISTRATION

| Date | Description | Timekeeper | Hours | Value |
|------|-------------|------------|-------|-------|
| 12/01/13 | Prepare motion to retain Seyfarth (1.20); prepare spreadsheet for use in preparation of motion to retain Seyfarth and accompanying Affidavit (.70). | J. McManus | 1.90 | 531.00 |
| 12/01/13 | Review/analyze draft purchase offer from B. Dallia for certain real and personal property (.20); review/analyze schedules and statement of financial affairs (.30); confer with G. Paloian regarding same (.10); review emails from G. Paloian and A. Maxwell regarding same (.10); call with A. Maxwell regarding same (.20); revise same (1.50); confer with G. Paloian regarding further revisions to same (.10); revise same (.20); draft email to A. Maxwell regarding review of same (.10); exchange emails with A. Maxwell regarding need to obtain information on property in France and retirement account contributions (.10); review email from A. Maxwell regarding same (.10). | J. Sowka | 3.00 | 1,215.00 |
| 12/31/13 | Review docket regarding Case No. 11-00136 (.10); download petition and schedules (.10). | J. Ziegler | 0.20 | 18.00 |
| 12/31/13 | Review 401(k) account statement. | J. Sowka | 0.10 | 40.50 |
| 01/02/14 | Review schedules (.30); review docket to determine case status (.10); confer with G. Paloian regarding opening case (.10); commence Seyfarth retention (.20); retrieve conversion pleadings filed with Court (.10); compile/review Debtor's Schedules (.20). | J. McManus | 1.00 | 270.00 |
| 01/02/14 | Communicate with A. Maxwell regarding order in adversary proceeding (.20); review 2010 tax return and investigate recovery of refund (.20); review MORS for OPS III (.20). | G. Paloian | 0.60 | 375.00 |
| 01/02/14 | Review additional documents regarding debtor's 401(k) contributions (.10); exchange emails with A. Maxwell regarding same (.30); confer with J. McManus regarding status of preparation of retention application (.10). | J. Sowka | 0.50 | 215.00 |
| 01/03/14 | Review tax return and MORS for OPS III (.50); (Giannos) telephone conference with Argionis regarding personal injury case (.30); review SOFA responses (Amendment); communications with E. Parker regarding Cottage in France (.10); review of revised SOFA answers (.20). | G. Paloian | 1.10 | 687.50 |
| 01/03/14 | Prepare motion to Retain Seyfarth Shaw (1.30); revise Sowka Affidavit (.80); prepare proposed Order (.30); prepare Service List (.40); confer with J. Sowka regarding motion (.10); revise Service List (.10). | J. McManus | 3.00 | 855.00 |

| Date | Description | Timekeeper | Hours | Value |
|------|-------------|------------|-------|-------|
| 01/03/14 | Confer with J. McManus regarding various case administration issues (.10); draft email to A. Maxwell regarding review of 401(k) contributions (.10); revise and finalize settlement agreement (.30); draft email to A. Maxwell regarding execution of same (.10); revise employment application motion (.20); review and revise affidavit supporting same and proposed order regarding same (.20); confer with J. McManus regarding revisions to same (.10). | J. Sowka | 1.10 | 473.00 |
| 01/03/14 | Review service list for accuracy (.50); review docket for attorney appearances (.40); update service list with same (.30); consult with J. McManus regarding same (.10). | J. Ziegler | 1.30 | 130.00 |
| 01/07/14 | Communications with E. Parker regarding France cottage disclosure and conveyance (.20); review transfer document (.20). | G. Paloian | 0.40 | 250.00 |
| 01/07/14 | Revise/finalize Seyfarth retention motion (.70); revise proposed Order (.10); revise Exhibit A to Sowka Affidavit (.10); cause motion to be filed with the Court (.20); review Debtor's schedules to confirm service list (.20). | J. McManus | 1.30 | 370.50 |
| 01/07/14 | Various conferences with J. McManus regarding preparation and filing of retention application for Seyfarth Shaw and motion to sell assets (.20); review and approve filing of sale motion (.10); review, execute, and approve filing of employment application and affidavit (.10). | J. Sowka | 0.40 | 172.00 |
| 01/08/14 | Communication with E. Parker regarding France real estate (.20); review order in adversary proceeding (.20); (Estrada) review account details (.20). | G. Paloian | 0.60 | 375.00 |
| 01/08/14 | Consult with J. McManus regarding continuing 341 meeting. | J. Ziegler | 0.20 | 20.00 |
| 01/13/14 | Exchange emails with J. Ziegler regarding filing of asset report. | J. Sowka | 0.10 | 43.00 |
| 02/12/14 | Review sale agreement regarding asset administration (.10); confer with L. West regarding retention and case status (.10). | J. McManus | 0.20 | 57.00 |
| 02/12/14 | Prepare Motion to Retain Accountant. | J. McManus | 0.50 | 142.50 |
| 02/13/14 | Communicate with J. McManus regarding retention of estate tax preparer and case closing issues. | G. Paloian | 0.20 | 130.00 |
| 02/13/14 | Prepare case strategy memo for G. Paloian (.40); calendar installment payments (.10). | J. McManus | 0.50 | 142.50 |
| 02/13/14 | Revise Motion to Retain Accountant. | J. McManus | 0.50 | 142.50 |
| 02/13/14 | Draft Application Approving Retention of Accountant (.70); revise same (.40). | J. Ziegler | 1.10 | 110.00 |
| 02/25/14 | Revise motion to retain Popowcer as accountant. | B. Harper | 0.20 | 66.00 |

3

| Date | Description | Timekeeper | Hours | Value |
|------|-------------|------------|-------|-------|
| 02/25/14 | Prepare proposed Order for accountant retention motion (.20); confer with B. Harper regarding edits to Motion (.10). | J. McManus | 0.30 | 85.50 |
| 02/26/14 | Revise proposed Order for retention of accountant for the Estate (.10); revise service list (.20); cause motion to be filed with the Court (.20); oversee service of same (.10). | J. McManus | 0.60 | 171.00 |
| 03/13/14 | Travel to and appear at hearing on motion to retain an accountant (.40); email to G. Paloian regarding same (.10) | B. Harper | 0.50 | 165.00 |
| 04/24/14 | Email communications with B. Harper regarding revising Trustee's Objection to Debtor's Exemption of Brokerage Commission (.20); prepare proposed Order regarding same (.20); revise Notice of Hearing (.10); cause objection to be filed with the Court (.20). | J. McManus | 0.70 | 199.50 |
| 06/06/14 | Exchange emails with A. Maxwell and G. Paloian regarding case administration issues. | J. Sowka | 0.10 | 43.00 |
| 09/12/14 | Communicate with E. Parker regarding France apartment. | G. Paloian | 0.20 | 125.00 |
| 09/25/14 | Review fee application of A. Maxwell. | G. Paloian | 0.20 | 130.00 |
| 10/02/14 | Review fee application of A. Maxwell (Debtor's counsel). | G. Paloian | 0.30 | 195.00 |
| 10/07/14 | Telephone conference with A. Maxwell regarding fee request. | G. Paloian | 0.20 | 130.00 |
| 10/08/14 | Contact debtor attorney to request 2010 tax returns pursuant to closing case (.10); review debtor attorney fee application to determine fees belonging to Lee and to Lee and Jeff pursuant to closing case (.20); consult with J. McManus regarding same (.10). | J. Ziegler | 0.40 | 40.00 |
| 10/16/14 | Communication with A. Maxwell regarding draft final report and Maxwell fee request. | G. Paloian | 0.20 | 130.00 |
| 10/21/14 | Communicate with A. Maxwell regarding fee request. | G. Paloian | 0.10 | 65.00 |
| 11/06/14 | Telephone conference with A. Maxwell regarding Maxwell fee application issues. | G. Paloian | 0.20 | 130.00 |
| 12/08/14 | Communicate with A. Maxwell regarding case status and claims review (.10); communicate with J. McManus regarding estate tax returns (.20). | G. Paloian | 0.30 | 195.00 |
| 12/09/14 | Confer with G. Paloian regarding case status. | J. McManus | 0.10 | 28.50 |
| 01/16/15 | Revise/finalize quarterly case status report. | J. McManus | 0.20 | 60.00 |
| 03/16/15 | Prepare Motion to Retain Marcus & Millichap (.40); prepare supporting Affidavit (.40); confer with J. Sowka regarding same (.10). | J. McManus | 0.90 | 270.00 |
| 06/16/15 | Investigate case closing status and Final Report. | G. Paloian | 0.20 | 137.00 |

| Date | Description | Timekeeper | Hours | Value |
|------|-------------|------------|-------|-------|
| 06/17/15 | Communicate with J. McManus regarding preparation of final report, tax returns and resolution of claim objections. | G. Paloian | 0.30 | 205.50 |
| 06/17/15 | Review claims (.20); communicate with A. Maxwell regarding case closing status (.10). | G. Paloian | 0.30 | 205.50 |
| 06/18/15 | Investigate case closing (.20); review final report (.30). | G. Paloian | 0.30 | 205.50 |
| | **TOTAL** | | **26.60** | **$9,729.00** |

## CLAIMS ADMINISTRATION AND ANALYSIS

| Date | Description | Timekeeper | Hours | Value |
|---|---|---|---|---|
| 05/12/14 | Prepare claims analysis spreadsheet. | J. McManus | 0.40 | 114.00 |
| 06/23/14 | Revise claims analysis spreadsheet. | J. McManus | 0.40 | 114.00 |
| 07/29/14 | Prepare claims analysis spreadsheet. | J. McManus | 0.40 | 114.00 |
| 07/29/14 | Download/print claims for analysis. | J. Ziegler | 0.50 | 50.00 |
| 08/04/14 | Analyze claims (.40); confer with G. Paloian regarding same (.10). | J. McManus | 0.50 | 142.50 |
| 08/05/14 | Review claims. | G. Paloian | 0.60 | 390.00 |
| 08/05/14 | Revise claims analysis spreadsheet (.30); confer with G. Paloian regarding same (.10); confer with J. Ziegler regarding TES claims ledger updates regarding same (.10). | J. McManus | 0.50 | 142.50 |
| 08/05/14 | Enter claims into claims analysis spreadsheet. | J. Ziegler | 0.40 | 40.00 |
| 08/11/14 | Revise claims analysis spreadsheet (.30); confer with J. Ziegler regarding secured claims analysis (.10). | J. McManus | 0.40 | 114.00 |
| 08/12/14 | Review claims regarding potential objections (.10); revise analysis spreadsheet (.20); confer with J. Ziegler regarding further analysis (.10). | J. McManus | 0.40 | 114.00 |
| 08/12/14 | Consult with J. McManus regarding follow-up on claims (.10); update claims analysis spreadsheet with allowed claims information (.10); update TES with same (.10); contact claimants from whom claim back-up is needed (.50); search docket for settlement with B. Dallia (.40); consult with J. McManus regarding same (.10). | J. Ziegler | 1.30 | 130.00 |
| 09/16/14 | Review amended claim of Andrew J. Maxwell (.10); revise claims analysis spreadsheet (.10); confer with G. Paloian regarding amended claim amount (.10); email communication to A. Maxwell requesting supporting documentation to claim (.20). | J. McManus | 0.50 | 142.50 |
| 09/17/14 | Review email from A. Maxwell regarding filing of amended claim and forward same to G. Paloian. | J. Sowka | 0.10 | 43.00 |
| 09/22/14 | Revise claims analysis spreadsheet. | J. McManus | 0.20 | 57.00 |
| 10/07/14 | Confirm claims resolution of secured claims. | J. McManus | 0.20 | 57.00 |
| 10/10/14 | Review claims. | G. Paloian | 0.20 | 130.00 |
| 11/06/14 | Review American Charter Bank proof of claim. | G. Paloian | 0.20 | 130.00 |
| 11/11/14 | Investigate claim of American Chartered Bank. | G. Paloian | 0.30 | 195.00 |
| 11/17/14 | Investigate recoveries by American Chartered Bank. | G. Paloian | 0.20 | 130.00 |
| 11/18/14 | Communicate with J. Litwin (American Chartered Bank) regarding paydowns on claim (.10); communicate with A. Maxwell regarding objection to claim of American Chartered Bank (.20). | G. Paloian | 0.30 | 195.00 |

6

| Date | Description | Timekeeper | Hours | Value |
|------|-------------|------------|-------|-------|
| 11/19/14 | Communicate with A. Maxwell regarding objection to American Chartered Bank claim (.20); review American Charter claim (.20). | G. Paloian | 0.40 | 260.00 |
| 12/04/14 | Review claim of American Charter Bank (.30); communicate with counsel for American Charter Bank regarding agreed order treating claims as unsecured (.10); communicate with J. McManus regarding same (.10). | G. Paloian | 0.50 | 325.00 |
| 12/04/14 | Analyze claims (.50); revise claims analysis spreadsheet (.70); confer with G. Paloian regarding Agreed Order regarding claim of American Chartered Bank (.10). | J. McManus | 1.30 | 370.50 |
| 12/08/14 | Review Amended Claim 11 (.10); confer with G. Paloian regarding same (.10); calculate claim amount due (.10); prepare Motion for Entry of Agreed Order regarding Claim No. 11 (.90); prepare Agreed Order (.40); confer with C. Harney regarding same (.10); revise claims analysis spreadsheet (.50). | J. McManus | 2.20 | 627.00 |
| 12/09/14 | Review Motion for Agreed Order Reclassifying Claim No. 11 (.40); conference with J. McManus regarding same (.20). | C. Harney | 0.60 | 225.00 |
| 12/09/14 | Revise Motion for Entry of Agreed Order (.30); revise service list (.10); revise Agreed Order (.10). | J. McManus | 0.50 | 142.50 |
| 12/11/14 | Finalize Motion for Entry of Agreed Order regarding Claim No. 11 (.20); revise Service List (.10); revise Agreed Order (.10); email to Claimant's counsel regarding same (.10). | J. McManus | 0.50 | 142.50 |
| 12/17/14 | Communications with J. Litwin regarding American Chartered Bank claim security resolution. | G. Paloian | 0.20 | 130.00 |
| 12/18/14 | Communicate with J. Litwin regarding reclassification of American Chartered Bank claim. | G. Paloian | 0.20 | 130.00 |
| 12/19/14 | Communicate with J. Litwin regarding class reclassification. | G. Paloian | 0.10 | 65.00 |
| 01/22/15 | Review Claim 14 and confer with G. Paloian regarding same (.10); revise claims analysis spreadsheet (.20). | J. McManus | 0.30 | 90.00 |
| 02/12/15 | Communications with A. Maxwell regarding objection to claim of American Chartered Bank (.20); communicate with J. McManus regarding objection to claim (.10); prepare objection (.20). | G. Paloian | 0.50 | 342.50 |
| 02/12/15 | Revise claims analysis spreadsheet. | J. McManus | 0.20 | 60.00 |
| 02/13/15 | Conference with J. McManus regarding objection to claim of American Chartered Bank (.20); review objection (.20). | G. Paloian | 0.40 | 274.00 |
| 02/13/15 | Review and revise objection to American Chartered Bank claim. | B. Harper | 0.50 | 165.00 |

| Date | Description | Timekeeper | Hours | Value |
|------|-------------|------------|-------|-------|
| 02/13/15 | Prepare Objection to Claim No. 11 (1.80); prepare proposed Order regarding same (.40); confer with G. Paloian and B. Harper regarding same (.20). | J. McManus | 2.40 | 720.00 |
| 03/13/15 | Communicate with J. Litwin regarding objection to claim of bank (.10); conference with B. Harper regarding agreed order (.10). | G. Paloian | 0.20 | 137.00 |
| 03/13/15 | Email correspondence with J. Litwin regarding resolution of objection to FirstMerit claim. | B. Harper | 0.20 | 66.00 |
| 03/16/15 | Communications with B. Harper regarding objection to claim of American Chartered Bank. | G. Paloian | 0.20 | 137.00 |
| 03/16/15 | Prepare proposed Agreed Order Reclassifying Claim No. 11 in preparation for 3/17 hearing on objection to same (.20); cause same to be filed with the Court (.10). | J. McManus | 0.30 | 90.00 |
| 05/22/15 | Review/analyze unresolved claims. | J. McManus | 0.40 | 120.00 |
| 06/17/15 | Review/confirm claims (.30); revise claims analysis spreadsheet (.50). | J. McManus | 0.80 | 240.00 |
| 06/23/15 | Revise claims ledger in TES. | J. McManus | 0.70 | 210.00 |
| 07/01/15 | Finalize claims analysis for case closing. | J. McManus | 0.80 | 240.00 |
| | **TOTAL** | | **22.40** | **$7,853.50** |

## SALE OF ASSETS

| Date | Description | Timekeeper | Hours | Value |
|------|-------------|------------|-------|-------|
| 07/30/13 | Telephone conference with Gary and F. Boonas regarding purchase of Lee Facklis interest in FBP Holdings and in real estate LLC (.50); telephone conference with A. Maxwell regarding appraisals (.30). | G. Paloian | 0.80 | 500.00 |
| 09/27/13 | Telephone conference with A. Maxwell regarding Facklis sale/settlement. | G. Paloian | 0.20 | 125.00 |
| 10/04/13 | Review terms of proposed sale/settlement. | G. Paloian | 0.30 | 187.50 |
| 10/07/13 | Review and modify proposed terms of settlement/sale of Facklis settlement. | G. Paloian | 0.30 | 187.50 |
| 10/08/13 | Review purchase agreement by Fred Booras. | G. Paloian | 0.20 | 125.00 |
| 10/11/13 | Review purchase offer (.20); communicate regarding additional value of French apartment (.10). | G. Paloian | 0.30 | 187.50 |
| 10/15/13 | Telephone conference with E. Parker regarding value of France apartment. | G. Paloian | 0.20 | 125.00 |
| 11/21/13 | Communicate with A. Maxwell regarding France property (.10); communicate with E. Parker regarding valuation of France property (.20); review 3rd Qtr income statement for OPS III (.20). | G. Paloian | 0.50 | 312.50 |
| 12/02/13 | Communications with A. Maxwell regarding purchase of assets from estate/settlement of claims. | G. Paloian | 0.20 | 125.00 |
| 12/04/13 | Communicate with A. Maxwell regarding proposed sale/settlement and property in France. | G. Paloian | 0.20 | 125.00 |
| 12/12/13 | Communicate with F. Parker regarding terms of a possible sale of estate assets. | G. Paloian | 0.20 | 125.00 |
| 12/19/13 | Review and revise term sheet on proposed sale of estate assets. | G. Paloian | 0.30 | 187.50 |
| 12/20/13 | Review agreement to sell assets. | G. Paloian | 0.20 | 125.00 |
| 12/27/13 | Review/analyze draft sale agreement from B. Dalia in the Lee Facklis. | J. Sowka | 0.30 | 121.50 |
| 12/30/13 | Communications with A. Maxwell regarding proposed sale of assets. | G. Paloian | 0.20 | 125.00 |
| 12/31/13 | Confer with B. Harper regarding preparation of motion to approve sale (.10); draft email to B. Harper regarding same (.10); review amended sale agreement (.10); call with A. Maxwell regarding same (.10); draft email to B. Harper regarding revisions to sale agreement (.10). | J. Sowka | 0.50 | 202.50 |
| 01/02/14 | Confer with B. Harper regarding revisions to sale agreement. | J. Sowka | 0.10 | 43.00 |
| 01/03/14 | Attend to asset report and investigate status of agreement to sell assets (.20); review sale agreement, motion and order (.50). | G. Paloian | 0.70 | 455.00 |

| Date | Description | Timekeeper | Hours | Value |
|------|-------------|------------|-------|-------|
| 01/03/14 | Review debtor's schedules (.40); review sale agreement (.30); review docket and case history (.30); draft motion for authority to sell debtor's assets (4.00); draft proposed order regarding same (.50). | B. Harper | 5.50 | 1,815.00 |
| 01/03/14 | Confer with B. Harper regarding sales motion. | J. McManus | 0.10 | 28.50 |
| 01/03/14 | Review sale motion (.20); review proposed order regarding same (.10); regarding amended sale agreement (.10); confer with B. Harper regarding revisions to same (.10); confer with G. Paloian regarding same and final terms of sale agreement (.10); revise and finalize sale motion (.10); sale order (.10); and sale agreement (.10); draft email to A. Maxwell regarding review of same (.10); exchange emails with A. Maxwell regarding suggested revisions to same (.10). | J. Sowka | 1.10 | 473.00 |
| 01/06/14 | Review executed sale agreement (.10); exchange emails with A. Maxwell regarding filing of sale motion and hearing date for same (.10). | J. Sowka | 0.20 | 86.00 |
| 01/07/14 | Revise/finalize motion to sell certain assets (.40); revise proposed Order (.20); cause motion to be filed with the Court (.20). | J. McManus | 0.80 | 228.00 |
| 01/08/14 | Communicate with J. Sowka regarding sale motion. | G. Paloian | 0.10 | 65.00 |
| 01/08/14 | Exchange emails with G. Paloian and A. Maxwell regarding filing of sale motion and hearing on same. | J. Sowka | 0.10 | 43.00 |
| 01/08/14 | Call with counsel for secured lender regarding proposed sale of the Whipple property. | J. Sowka | 0.10 | 43.00 |
| 01/20/14 | Review message from counsel to creditor regarding sale motion (.10); return call E. Lowry regarding same (.10). | J. Sowka | 0.20 | 86.00 |
| 01/27/14 | Review American Charter Bank objection to sale of assets (.40); communicate with J. Sowka regarding objection and treatment at hearing (.30). | G. Paloian | 0.70 | 455.00 |
| 01/27/14 | Review/analyze objection to sale motion filed by American Chartered Bank (.40); draft email to G. Paloian and A. Maxwell regarding same (.10); call with A. Maxwell regarding same (.40); confer with G. Paloian regarding same (.20). | J. Sowka | 1.10 | 473.00 |
| 01/28/14 | Review American Chartered Bank's objection to Estate sale of assets (.40); appear in court on motion/objection (.60); conference with Bank counsel regarding offer (.10). | G. Paloian | 1.10 | 715.00 |
| 01/28/14 | Prepare for hearing on sale motion and retention application (.40); various conferences with G. Paloian regarding same (.20); appear in court for hearing on same (.80) review email from A. Maxwell regarding same (.10); confer with B. Harper regarding preparation of response in support of sale motion (.20). | J. Sowka | 1.70 | 731.00 |
| 01/29/14 | Review objection to sale motion. | B. Harper | 0.30 | 99.00 |

| Date | Description | Timekeeper | Hours | Value |
|---|---|---|---|---|
| 01/30/14 | Confer with B. Harper regarding issues related to preparation of response in support of sale motion. | J. Sowka | 0.30 | 129.00 |
| 01/31/14 | Review objection to sale by American Chartered Bank (.50); brief research regarding cause for denying right to credit bid in sale of equity (1.20); draft response to objection to sale (3.70). | B. Harper | 5.40 | 1,782.00 |
| 02/03/14 | Revise response to objection to sale motion (.70); conference with J. Sowka regarding same (.10); shepardize In regarding Hickey Properties case cited in brief (.10). | B. Harper | 0.90 | 297.00 |
| 02/03/14 | Review and revise response in support of sale motion (1.70); various conferences with B. Harper regarding further revisions to same (.20); review same (.20); confer with G. Paloian regarding same (.10). | J. Sowka | 2.20 | 946.00 |
| 02/04/14 | Conference with J. Sowka regarding American Chartered credit bid offer. | G. Paloian | 0.20 | 130.00 |
| 02/04/14 | Revise response to incorporate comments of G. Paloian. | B. Harper | 0.50 | 165.00 |
| 02/04/14 | Confer with G. Paloian regarding suggested revisions to response in support of sale motion (.10); review same (.20); confer with B. Harper regarding same (.10); review/finalize response (.50); draft email to C. Tholen regarding filing of same (.10); call with F. Lammiman regarding offer of settlement regarding same (.10); confer with G. Paloian regarding same (.10). | J. Sowka | 1.20 | 516.00 |
| 02/05/14 | Place call to F. Lammiman regarding counteroffer from American Chartered Bank. | J. Sowka | 0.10 | 43.00 |
| 02/06/14 | Review reply brief filed by American Chartered Bank in support of objection to sale motion. | J. Sowka | 0.10 | 43.00 |
| 02/07/14 | Review American Charter Bank objection to Trustee sale. | G. Paloian | 0.30 | 195.00 |
| 02/07/14 | Review opposition and credit bid filed by American Chartered Bank with respect to the sale motion. | J. Sowka | 0.10 | 43.00 |
| 02/10/14 | Communications with J. Sowka regarding closing documents for sale of Estate interest in assets to B. Dallia (.20); review closing documents (.20). | G. Paloian | 0.40 | 260.00 |
| 02/10/14 | Review reply in support of objection filed by American Chartered Bank (.10); review credit bid from American Chartered Bank (.10); confer with G. Paloian regarding same and hearing on same (.30); prepare for hearing on same (.20); review email from A. Maxwell regarding same (.10). | J. Sowka | 0.80 | 344.00 |
| 02/11/14 | Appear in court on continued motion to sell assets to Facklis' mother (.70); conference with A. Maxwell regarding closing (.20); prepare for court hearing (.40). | G. Paloian | 1.30 | 845.00 |
| 02/11/14 | Draft promissory note (.70); draft quitclaim deed and revise same (1.00); draft bill of sale (1.20). | B. Harper | 2.90 | 957.00 |

| Date | Description | Timekeeper | Hours | Value |
|------|-------------|-----------|-------|-------|
| 02/11/14 | Prepare for hearing on sale motion (.20); appear in court for hearing on same (.70); exchange emails with G. Paloian and A. Maxwell regarding closing for sale (.10); various conferences with B. Harper regarding preparation of closing documents (.20); review and revise same (.30); draft email to G. Paloian and A. Maxwell regarding review of same (.10). | J. Sowka | 1.60 | 688.00 |
| 02/12/14 | Review and comment on closing documents for sale of assets (.20); execute sale documents (.10). | G. Paloian | 0.30 | 195.00 |
| 02/12/14 | Review proposed revisions from A. Maxwell to the closing documents (.20); draft email to B. Harper regarding same (.10); review finalized version of closing documents (.20); cause G. Paloian to execute same (.10); draft email to A. Maxwell transmitting same and addressing closing procedures (.20); exchange emails with A. Maxwell regarding same (.10); meet with A. Maxwell and conduct closing (.30); confer with G. Paloian regarding same (.10); confer with J. McManus regarding same (.10); review email from J. McManus regarding need to retain accountant (.10). | J. Sowka | 1.50 | 645.00 |
| 04/10/14 | Exchange emails with A. Maxwell regarding issues related to transfer of the Whipple property. | J. Sowka | 0.10 | 43.00 |
| 04/29/14 | Review email from E. Parker regarding execution of grantee statement and review same (.10); exchange emails with A. Maxwell regarding same (.10). | J. Sowka | 0.20 | 86.00 |
| 04/30/14 | Review affidavit to accompany quit claim deed prepared by debtor (.10); confer with G. Paloian regarding execution of same (.10). | J. Sowka | 0.20 | 86.00 |
| 05/01/14 | Review executed grantee statement from E. Parker (.10); exchange emails with A. Maxwell regarding same and execution of grantor statement by G. Paloian (.10); meet with A. Maxwell to deliver same (.10). | J. Sowka | 0.30 | 129.00 |
| 09/09/14 | Investigate sale compliance by Dalia (buyer) and status of claims bar date. | G. Paloian | 0.20 | 130.00 |
| 10/22/14 | Communicate with estate tax preparer regarding determination of cost basis for sold assets. | G. Paloian | 0.20 | 130.00 |
| 10/23/14 | Review Facklis/entities prior years tax returns regarding cost basis of sale assets. | G. Paloian | 0.20 | 130.00 |
| 10/28/14 | Review sales motion and debtors liquidation analysis. | G. Paloian | 0.30 | 195.00 |
| | **TOTAL** | | **40.60** | **$17,877.00** |

## FEE APPLICATIONS

| Date | Description | Timekeeper | Hours | Value |
|------|-------------|------------|-------|-------|
| 10/21/14 | Prepare Exhibit 2 to Seyfarth's Final Fee Application. | J. McManus | 0.70 | 199.50 |
| 11/17/14 | Prepare Seyfarth Fee Application. | J. McManus | 0.70 | 199.50 |
| 12/16/14 | Revise first and final Seyfarth fee application detail. | J. McManus | 0.50 | 142.50 |
| 01/15/15 | Prepare Seyfarth Fee Application. | J. McManus | 0.50 | 150.00 |
| 05/13/15 | Prepare Trustee Fee Application. | J. McManus | 0.70 | 210.00 |
| 05/20/15 | Prepare final trustee fee application. | J. McManus | 0.50 | 150.00 |
| 06/15/15 | Revise Trustee Fee Application. | J. McManus | 0.60 | 180.00 |
| 06/18/15 | Revise Seyfarth Fee Application. | J. McManus | 0.50 | 150.00 |
| 06/18/15 | Prepare first and final Seyfarth Fee Application (1.30); prepare first and final Trustee Fee Application (.90). | J. McManus | 2.20 | 660.00 |
| 06/19/15 | Prepare Final Seyfarth Fee Application. | J. McManus | 1.20 | 360.00 |
| 06/26/15 | Revise Trustee Fee Application Exhibit 1 (.50); revise Seyfarth Fee Application Exhibit 1 (.50). | J. McManus | 1.00 | 300.00 |
| | **TOTAL** | | **9.10** | **$2,701.50** |

| Task | Description | Hours | Value |
|------|-------------|-------|-------|
| A | Case Administration | 26.60 | $9,729.00 |
| CC | Claims Administration and Analysis | 22.40 | $7,853.50 |
| S | Sale of Assets | 40.60 | $17,877.00 |
| C | Fee Applications | 9.10 | $2,701.50 |
| | | **98.70** | **$38,161.00** |

# EXHIBIT 3

## DISBURSEMENTS

### Copying

| Date | Disbursements | Value |
|------|---------------|-------|
| 01/09/14 | Copying   (1,301 copies @ $0.10 per page) | 130.10 |
| 02/26/14 | Copying   (487 copies @ $0.10 per page) | 48.70 |
| 03/13/14 | Copying   (2 copies @ $0.10 per page) | 0.20 |
| 11/05/14 | Copying   (95 copies @ $0.10 per page) | 9.50 |
| 12/30/14 | Copying   (18 copies @ $0.10 per page) | 1.80 |
| 02/13/15 | Copying   (244 copies @ $0.10 per page) | 24.40 |
| | | **$214.70** |

### Online Research

| Date | Disbursements | Value |
|------|---------------|-------|
| 04/28/14 | Online Research - PACER SERVICE CENTER - Pacer Charges 1st Quarter 2014 | 15.60 |
| 02/17/15 | Online Research - PACER SERVICE CENTER - Pacer Charges 4th Quarter 2014 | 9.30 |
| 05/18/15 | Online Research - PACER SERVICE CENTER - Pacer Charges 1st Quarter 2015 | 4.60 |
| | | **$29.50** |

**Total Disbursements**                                                    **$244.20**

20465583v.1